**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID HOLT II,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 17-2511** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                    **May 23, 2018**

## MEMORANDUM

Plaintiff David Holt brings the current action under Title VII, 42 U.S.C. §§ 1981 and 1983, and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., alleging discrimination and retaliation during his continuing tenure of employment with the Pennsylvania State Police. By way of two separate Motions, the various Defendants seek dismissal of the First Amended Complaint. For the following reasons, I will grant the Motions in part and deny them in part.

## I.      FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint:[1]

Defendant Commonwealth of Pennsylvania ("Commonwealth") hired Plaintiff on November 6, 1994, as a member of the Pennsylvania State Police Department ("PSP"). Plaintiff was promoted to corporal in May 2005, and then to sergeant in November of 2006. Plaintiff was

---

[1]  In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

assigned as the Station Commander of the PSP Pocono Station. The rank of Station Commander provides a degree of authority, prestige, and increased career opportunities within the PSP, in contrast to other assigned sergeant positions. (Am. Compl. ¶¶. 21–26.)

On April 6, 2009, Plaintiff filed a formal internal Equal Employment Opportunity ("EEO") complaint, against the PSP, alleging racial discrimination. Thereafter, on May 21, 2009, Plaintiff filed a racial discrimination charge against the PSP with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the EEOC. Plaintiff filed a second PHRC charge of racial discrimination against the PSP on July 21, 2009, which charge was then cross-filed with the EEOC. Finally, on October 19, 2010, Plaintiff filed a civil lawsuit in the United States District Court for the Eastern District of Pennsylvania against the Commonwealth, the PSP, and others, alleging First Amendment retaliation, race discrimination, and employment discrimination and retaliation. (Id. ¶¶ 27–31.)

On September 27, 2011, Plaintiff sent an email to Defendant Commissioner Frank Noonan, a supervisor at the PSP, regarding both the discrimination and retaliation charges and the pending federal lawsuit. In October 2011, Corporal Jeffrey Taylor met with Defendant Lieutenant Colonel George Bivens, Joseph Kovel—Union President of the Pennsylvania State Troopers Association—and Human Resources representative Richard Achey regarding Plaintiff's claims of discrimination and retaliation. Despite the meeting, neither the Commonwealth nor any of the individuals took action to investigate or remedy the Plaintiff's complaints. (Id. ¶¶ 33–35.)

In October 2013, Plaintiff's federal race discrimination/retaliation trial commenced against PSP and other defendants. A jury rendered a verdict against the Commonwealth and the PSP in favor of Plaintiff on some of his claims for $50,000 damages. Plaintiff advised his

Commanding Officer, Defendant Captain Gregory Bacher, of the outcome of the trial and the fact that the NBC News 10 was going to interview him about the trial, verdict, and ongoing discrimination.  Captain Bacher warned Plaintiff not to say anything negative that would put the PSP in a "bad light."  NBC News 10 subsequently aired Plaintiff's interview in the area where PSP headquarters is located.  (Id. ¶¶ 37, 39–42.)

On March 29, 2014, Plaintiff became eligible for promotion.  Despite the fact that Plaintiff scored a 94% on the promotional exam for lieutenant, he was skipped over for any promotion.  Instead, Commissioner Noonan and Lieutenant Colonel Bivens chose allegedly less qualified, lower-scoring whites who were ranked lower on the promotional list.  Noonan and Bivens again skipped over Plaintiff for promotion in July 2014.   In August and September 2014, Plaintiff received stellar reviews and evaluations about his work as Station Commander.  (Id. ¶¶ 36, 43–50.)

In October 2014, Plaintiff received a citizen complaint concerning a serious crash involving lead investigator Trooper Randall Hart, Trooper Joel Cikowski, and supervising Corporal Francis Aigeldinger, all of whom are white males.  The complaint indicated that Hart failed to arrest a DUI suspect for crashing his vehicle into another vehicle causing significant damage and injuring an eighteen-year-old woman.  Under PSP practice and regulation, Plaintiff reported the incident to the Internal Affairs ("IA") Investigative Unit.  Plaintiff subsequently informed the Pocono Station members of the citizen complaint and the IA investigation.  Some members of the Station, including Trooper Lisa Girman, "belligerent[ly]" challenged Plaintiff's decision to report the incident.  Plaintiff asked Girman to leave roll call and stated, "I could be like how the old sergeants were back in the day, when they would tell you 'we could just take our shirts off and go out in to the garage and settle this like men.'"  (Id. ¶¶ 52–58.)

Shortly thereafter, Plaintiff was advised that some members were "offended" by his comment. Despite Plaintiff's immediate open apology email to all station members, Corporals Frances Aigeldinger and Jeremy Franklin, white males, circumvented the chain-of-command by reporting the roll call incident directly to Captain Bacher, claiming that Plaintiff threatened Trooper Girman with physical violence. Although circumvention of the chain-of-command is a punishable work rule violation, Captain Bacher did not discipline Corporals Aigeldinger and Franklin. On October 20, 2014, Captain Bacher contacted the PSP's EEO Director, Captain Wendell Morris, and notified him of the Corporals' complaint. Captain Morris advised that no EEO violations occurred in reference to that complaint. The next day, Captain Bacher contacted Corporal Aigeldinger and asked him to obtain signed letters from all of Plaintiff's subordinates identifying any misconduct they knew about Plaintiff. (Id. ¶¶ 59–71.)

On October 27, 2014, Plaintiff was scheduled to attend the second phase of his jury trial on the federal discrimination/retaliation claims. He named Corporal Aigeldinger as the "Acting Station Commander" in his absence. (Id.) Following the second jury trial, Plaintiff was awarded damages against PSP in the amount of $1.9 million. Plaintiff immediately texted the verdict award to several members of Pocono Station. Randell Henzes of the Office of the Attorney General for the Commonwealth of Pennsylvania was present for the verdict. Plaintiff avers that, as of January 1, 2016, Defendants Noonan, Brown, and Blocker were informed by Henzes of the judgments. Plaintiff also believes that, before November 6, 2014, Defendant Captain Bacher knew of these judgments. (Id. ¶¶ 72–76, 79–81.)

At a meeting with Plaintiff on November 6, 2014, Captain Bacher produced a thick manila folder containing what Bacher called "station complaints" against Plaintiff. Plaintiff then became the subject of an IA investigation initiated by Bacher, who claimed that Plaintiff

threatened Trooper Girman at roll call on October 16, 2014. This investigation was contrary to how Bacher treated complaints received against white sergeants. (Id. ¶¶ 83, 85–89.)

On December 6, 2014 and January 14, 2015, Commissioner Noonan and Lieutenant Colonel Bivens again passed over Plaintiff for promotion to lieutenant. (Id. ¶¶ 90, 99.)

On January 28, 2015, Plaintiff received written correspondence from Captain Bacher indicating that Bacher cleared Hart of all of the administrative charges relating to the IA investigation originating from the DUI crash. Shortly thereafter, on February 17, 2015, Plaintiff received a "sustained" PSP Disciplinary Action Report from Captain Bacher based on Plaintiff's alleged creation of a hostile work environment and disparate treatment of employees. Plaintiff was placed on "Restricted Duty" and Captain Bacher ordered Plaintiff's immediate supervisor, Lieutenant Dance, to drive to the Pocono Station every day to physically supervise Plaintiff. (Id. ¶¶ 100–102, 104.)

On February 26, 2015, Plaintiff filed an EEO complaint against Captain Bacher. Captain Bacher "un-expectantly" retired from the PSP two weeks later. (Id. ¶¶ 106–108.)

On April 13, 2015, while driving his PSP-assigned vehicle to work, Plaintiff encountered and followed a DUI driver, but was unable to stop the driver because Plaintiff's vehicle's emergency lights and sirens were "purposely disabled by the PSP and Captain Bacher." As a result, Plaintiff received a twenty-day suspension without pay from PSP's Disciplinary Officer Captain Troxell and his assistant, Lieutenant O'Hara. Thereafter, Captain Cain and Major Hoke involuntarily transferred Plaintiff from the Pocono Station to Highspire, Pa. The suspension resulted in a loss of wages of $10,000 and precluded Plaintiff from being eligible for promotion or transfer for one year. The transfer further resulted in approximately $32,000 in lost

construction zone overtime wages, deprived Plaintiff of the use of a Department vehicle, and changed the nature of Plaintiff's duties.  (Id. ¶¶ 109–110, 112–117.)

On April 25, 2015, Plaintiff filed an internal EEO complaint against Captain Cain, Lieutenant Colonel Bivens, and Major Hoke.  On the same date, he sent an e-mail to PSP Commissioner Brown concerning his complaints of discrimination and retaliation by high-ranking PSP officers.  EEO Director Captain Morris responded, on June 9, 2015, that he would not investigate Colonel Bivens.  (Id. ¶¶ 118, 120, 121, 123.)

Plaintiff received his yearly evaluation from Lieutenant Dance in June 2015, rating him as "outstanding."  Captain Cain, however, changed Lieutenant Dance's ratings and listed Plaintiff as "unsatisfactory" in every category, despite the fact that Cain was not Plaintiff's direct supervisor.  (Id. ¶¶ 124, 126.)

On August 25, 2015, Plaintiff became the subject of another PSP IA investigation, initiated by Captain Cain, concerning Plaintiff's "off duty" conduct when he accidentally left his personal handgun in a bathroom stall at a Pennsylvania Turnpike building.  As a result, in December, Plaintiff received a "sustained" Disciplinary Action Report from Captain Maurice Tomlinson, a black male.  Thereafter, Lieutenant O'Hara and Captain Troxell imposed a seven-day suspension without pay.  (Id. ¶¶ 128, 130, 132.)

Plaintiff filed another internal EEO Complaint, on January 28, 2016, against Lieutenant O'Hara and Captain Troxell for retaliation/excessive discipline.  The following month, Captain Troxell retired from the PSP.  On May 20, 2016, Plaintiff sent a certified letter to Governor Thomas Wolf complaining of systemic racism and discrimination inside the PSP because all of his internal EEO complaints and appeals were met with negative outcomes.  His appeal to the Governor's office was fruitless.  (Id. ¶¶ 134–137.)

Plaintiff alleges that neither the Commonwealth nor PSP has satisfied Plaintiff's judgments against them.  (Id. ¶¶ 141–45.)

Following his exhaustion of administrative remedies, Plaintiff initiated this lawsuit on June 6, 2017, against Defendants Commonwealth, PSP, Marcus Brown, Frank Noonan, George Bivens, Edward Hoke, Wendell Morris, Gregory Bacher, Michael Troxell, David Cain, Anthony O'Hara, and Tyree Blocker.  His Amended Complaint, filed on September 14, 2017, sets forth five causes of action:  (1) First Amendment retaliation under 42 U.S.C. § 1983, (2) race discrimination under § 1983, (3) employment discrimination/retaliation under Title VII, 42 U.S.C. § 2000e, (4) employment discrimination/hostile work environment, under Title VII, and (5) employment discrimination/retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.

On November 1, 2017, Defendant Frank Noonan filed a Motion to Dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The same day, the remaining Defendants (collectively, the "Commonwealth Defendants") filed a Motion to Dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).  Plaintiff responded to both Motions on November 13, 2017.

## II.     STANDARDS OF REVIEW

### A.     Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case.  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist."  Id. at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. <u>Mortensen</u>, 549 F.2d at 891. In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. <u>Id.</u>

**B.** **<u>Rule 12(b)(3)</u>**

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may seek to dismiss a case on the basis of improper venue. This rule is designed "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." <u>Cottman Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994) (emphasis added) (quoting <u>Leroy v. Great W. United Corp.</u>, 443 U.S. 173, 183–184 (1979)). When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(3), a court must accept as true the allegations in the complaint, unless contradicted by the defendant's affidavits. <u>Baker v. Berman</u>, No. 09–1061, 2009 WL 3400941 at *2 (W.D. Pa. Oct. 21, 2009) (citing <u>Campanini v. Studsvik, Inc.</u>, No. 08–5910, 2009 WL 926975 (E.D. Pa. Apr. 6, 2009)). While the court may consider facts outside the complaint to determine the proper venue, all reasonable inferences must be drawn in the plaintiff's favor. <u>Id.</u> (citing <u>Fellner v. Phila. Toboggan Coasters, Inc.</u>, No. 05–2052, 2005 WL 2660351 (E.D. Pa. Oct. 18, 2005)).

## C.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

## III.    DISCUSSION

### A.    Title VII Claims Against Individual Defendants

Defendants first seek to dismiss any Title VII claims brought against Brown, Noonan, Bivens, Hoke, Morris, Bacher, Troxell, Cain, O'Hara, and Blocker (collectively, the "individual Defendants").

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, proscribes employment discrimination on account of race, color, religion, sex and national origin.   The Third Circuit has long held that individuals cannot be personally liable. See Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) (holding that "individual employees are not liable under Title VII."); see also Dici v. Commw. of Pa., 91 F.3d 542, 552 (3d Cir. 1996) ("individual employees cannot be held liable under Title VII").

In Counts III and IV of the Amended Complaint (the Title VII counts), Plaintiff specifically alleges that the "individual Defendants" are liable under Title VII.   (Am. Compl. ¶¶ 176, 184–86.)   Under the well-established law, to the extent Counts III and IV are brought against the individual Defendants, these claims are dismissed.[2]

### B.    Section 1983 Claims Against the Commonwealth & PSP

Defendants next move to dismiss Plaintiff's § 1983 claims—set forth in Counts I and II of the Amended Complaint—pursuant to the Eleventh Amendment.

"The Eleventh Amendment renders the States immune from 'any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any

---

[2]  Plaintiff concedes that Title VII does not recognize individual employee liability, but contends that he only brings these claims against "his employer" and that he "merely identified his supervisors and their actions, which is done to provide notice of the claim, the finds, to find strict liability against the employer from supervisor action."   (Pls.' Opp'n Commw. Defs.' Mot. to Dismiss, pp. 12–13.)   Contrary to Plaintiff's representation, the Amended Complaint expressly names the individual Defendants within these Counts.

Foreign State.'" Tennessee v. Lane, 541 U.S. 509, 517 (2004). "It is clear . . . that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The Eleventh Amendment's grant of sovereign immunity to states and state agencies contains two general exceptions. See Alden v. Maine, 527 U.S. 706, 755–56 (1999); M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 345 (3d Cir. 2003). First, Congress may abrogate Eleventh Amendment immunity if it has "unequivocally expresse[d] its intent to" do so and acted "pursuant to a valid exercise of power." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)). Second, states may consent to be sued, Alden, 527 U.S. at 755, through an "unequivocally expressed" waiver of sovereign immunity. Pennhurst, 465 U.S. at 99.

Neither of the relevant exceptions applies to claims against a state or state agency under § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of rights secured by the Constitution or by federal statute. 42 U.S.C. § 1983. The United States Supreme Court has held that Congress did not abrogate a state's Eleventh Amendment immunity in enacting § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979). Indeed, in Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989), the Supreme Court clarified that states are not "persons" under § 1983 and therefore may not be sued in federal or state court under that statute. See Howlett v. Rose, 496 U.S. 356, 365 (1990). In addition, Pennsylvania, by statute, has explicitly reserved its right to immunity from suit in federal court and, thus, does not "unequivocally express" any waiver. See 42 Pa. Cons. Stat. § 8521(b).

Counts I and II of the Amended Complaint set forth § 1983 claims against all Defendants. Although Plaintiff argues, in his opposition brief, that "the Commonwealth and its agency are not sued under § 1983," (see Pl.'s Opp'n Commw. Defs.' Mot. to Dismiss, pp. 13–14), the Amended Complaint alleges both counts against all "Defendants," and specifically asserts § 1983 claims against the Commonwealth and the PSP. (See Am. Compl. ¶¶ 150, 154.) As such, to the extent Counts I and II are brought against the Commonwealth and the PSP, the Commonwealth Defendants' Motion will be granted and these claims will be dismissed.

## C. PHRA Claims Against the Commonwealth and PSP

Defendants also seek dismissal of the PHRA claim (Count V) as alleged against the Commonwealth and PSP.

While the PHRA has been held to waive Pennsylvania's immunity from suit in *state* court, see Mansfield State Coll. v. Kovich, 407 A.2d 1387, 1388 (Pa. Commw. 1979), that waiver does not subject Pennsylvania to a PHRA suit in *federal* court. Williams v. Pa. State Police Bureau of Liquor Control Enf't, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000); see also Dennison v. Pa. Dep't of Corr., 268 F. Supp. 2d 387, 404–05 (M.D. Pa. 2003) (holding that a Commonwealth agency possesses immunity in federal court for claims under the PHRA); 42 Pa.C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

Without any supporting authority, Plaintiff baldly proclaims that the PHRA has abrogated the Eleventh Amendment bar. As the well-established law holds to the contrary, I will dismiss Plaintiff's PHRA claim against both the Commonwealth and the PSP.

### D. Statute of Limitations

Defendants further contend that the § 1983 claims against Defendants Blocker, Brown, Bivens, Hoke, Bacher, and Noonan are barred by the applicable statute of limitations.

Claims brought pursuant to § 1983 are subject to the state statute of limitations for personal injury actions. Ormsby v. Luzerne Cnty. Dep't of Public Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir. 2005). In Pennsylvania, that limitations period is two years. See 42 Pa. Cons. Stat. § 5524.

Federal law governs the accrual date of a § 1983 claim. Wallace v. Kato, 549 U.S. 384, 388 (2007). "[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994). "First Amendment retaliation claims are always individually actionable, even when relatively minor." O'Connor v. City of Newark, 440 F.3d 125, 127–28 (3d Cir. 2006). The statute of limitations, therefore, begins to run when an alleged retaliatory act occurs. Id. at 128 (noting that causes of action that can be brought individually expire with the applicable limitations period).

The strict calculation of the statute of limitations is tempered somewhat by the equitable "continuing violations" doctrine. Pursuant to this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). To benefit from the doctrine, a plaintiff must establish both: (1) that "the last act evidencing the continuing practice falls within the limitations period"

and (2) that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." Id. at 292. "The focus of the continuing violations doctrine is on affirmative acts of the defendants." Id. at 293.

Notably, however, "the continuing violations doctrine is not a substitute for a plaintiff's 'awareness of and duty to assert his/her rights' in a timely fashion." Bennett v. Susquehanna Cnty. Children & Youth Servs., 592 F. App'x 81, 85 (3d Cir. 2014) (quotation omitted). The continuing violations theory does not apply to injuries that occurred before the filing period if the plaintiff was aware of those injuries at the time they occurred. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Discrete "unlawful employment practices" actionable as independent causes of action include termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

Here, Plaintiff initiated his action on June 6, 2017, when he filed his original Complaint, meaning that any claims that accrued prior to June 6, 2015 are untimely. To avoid this time bar, Plaintiff offers a perfunctory argument that the numerous adverse actions, when viewed as a whole, "developed a continuing practice to retaliate against Plaintiff for first amendment activity."

This effort to invoke the continuing violations doctrine improperly lumps the acts of the various Defendants together, disregarding the fundamental principle that "a defendant in a civil

rights action must have personal involvement in the alleged wrongs" and is not liable on a purely *respondeat superior* basis  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thus, to comply with this principle, a plaintiff must establish, for each defendant, that his/her acts outside the limitations period were part of a continuing practice by that same defendant with the last act by that defendant falling within the limitations period.

The Amended Complaint fails to make such a showing.  Rather, the plain allegations of the Amended Complaint reveal that Plaintiff's section 1983 retaliation claims[3] against Defendants Blocker, Noonan, Bivens, Hoke, and Bacher accrued prior to the June 6, 2015 limitation date and, thus, are barred by the statute of limitations.

        1.    Commissioner Blocker

The only allegation against Commissioner Blocker is that he was informed by Randell Henzes of the Office of Attorney General for the Commonwealth of Pennsylvania of the judgments in favor of Plaintiff resulting from the 2013 and 2014 verdicts.  (Am. Compl. ¶¶ 79–80.)  The Amended Complaint is devoid of any further allegations against Blocker or identification of any adverse actions in which Blocker may have been involved against Plaintiff subsequent to June 6, 2015.[4]  Accordingly, the § 1983 claims against Defendant Blocker must be dismissed.

---

[3]    To the extent Count II of the Amended Complaint premises the section 1983 claims on a theory of racial discrimination which also constitutes a violation of Title VII, those claims are not actionable under § 1983.  Williams v. Pa. Human Relations Comm., 870 F.3d 294, 299 (3d Cir. 2017)  ("Allowing pure Title VII and ADA claims under § 1983 would thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposely fortified.").

[4]    The only other allegation regarding Blocker in the Amended Complaint appears in the "Parties" section.  Plaintiff explains that Blocker "is a black male and a supervisor and/or decision-makers as the term is intended for the claims and/or a 'cat's paw' theory of liability" because he was a Commissioner and principal decisionmaker at the PSP. (Am. Compl. ¶ 11.)  A "cat's paw" theory is a means of pursuing Title VII liability against an employer based on a

### 2. Commissioner Noonan and Lieutenant Colonel Bivens

As to both Commissioner Noonan and Lieutenant Colonel Bivens, the Amended Complaint asserts that these Defendants passed over Plaintiff for promotion on several occasions: March 2014, July 2014, December 2014, and January 2014. (Am. Compl. ¶¶ 44, 47, 90, 99.) As set forth above, failures to promote are discrete "unlawful employment practices" actionable as independent causes of action. O'Connor, 440 F.3d at 127. These causes of action accrued prior to June 6, 2015, meaning that they are time barred. [5]

### 3. Major Hoke

The sole allegation against Major Hoke is that he involuntarily transferred Plaintiff from the Pocono Station to Highspire, Pennsylvania, resulting in wage loss, loss of promotion eligibility, loss of Station Commander status, and loss of use of a Department vehicle. (Am. Compl. ¶¶ 112–117.) This transfer, however, occurred on April 24, 2015, well outside the two-year statute of limitations period. Accordingly, a claim based on this discrete incident is time-barred.

### 4. Captain Bacher

The allegations against Captain Bacher are more numerous:

---

finding that the source of illegal animus was an employee who proximately caused the adverse employment action. Mason v. Se. Pa. Transp. Auth., 134 F. Supp. 3d 868, 873–74 (E.D. Pa. 2015). This theory is simply an evidentiary means by which to prove liability against an employer and is an insufficient basis on which to impose individual liability on the employee.

[5] In his response brief, Plaintiff argues, without citation, that these adverse actions were brought to the attention of United States Magistrate Judge Strawbridge in connection with his lawsuit in Holt I in March 2017, and that Judge Strawbridge indicated that Plaintiff's damages expert in that case could not testify regarding damages from the non-promotions. Judge Strawbridge purportedly went on to hold that Plaintiff had to seek separate relief in the present case for those non-promotions.

This argument fails to explain why these claims are not time-barred. To the extent Plaintiff is arguing that Judge Strawbridge declined to allow Plaintiff to include the promotion denials in his previous federal case, such a ruling only goes to what were permissible claims in the prior case, not whether such claims are timely in the present case.

- In October 2013, Captain Bacher warned Plaintiff not to say anything negative about his trial verdict that would put the PSP in a "bad light." (Id. ¶ 41.)

- In October 2014, Captain Bacher failed to discipline the Corporals who circumvented the chain-of-command and reported Plaintiff regarding the roll call incident. (Id. ¶¶ 62–63.) Captain Bacher then began an investigation of Plaintiff's conduct at the roll call incident. (Id. ¶ 71.)

- In November 2014, Captain Bacher ordered a meeting with Plaintiff regarding "station complaints" against Plaintiff. (Id. ¶83.) Bacher then initiated an internal affairs investigation against Plaintiff. (Id. ¶ 85.)

- On January 28, 2015, Captain Bacher cleared Trooper Hart of all administrative charges related to the IA investigation initiated by Plaintiff against Hart. (Id. ¶ 110.)

- In February 2015, Plaintiff received a "sustained" PSP Disciplinary Action Report from Captain Bacher indicating that Plaintiff created a hostile work environment and engaged in disparate treatment. (Id. ¶ 101.) As a result, Plaintiff was placed on "restricted duty" and subject to increased supervision. (Id. ¶¶ 102–104.)

- Captain Bacher retired from the PSP in March 2015. (Id. ¶ 108.)

Not one single action by Captain Bacher fell within the two-year limitations period. Indeed, as alleged by Plaintiff, Bacher was no longer with the police force at any time during the two years prior to the filing of the Complaint.

### 5. Conclusion as to Time Bar

Defendants concede that the Amended Complaint, as pled, sets forth timely § 1983 claims against Captain Troxell, Captain Cain, Lieutenant O'Hara, and Major Morris. Moreover, I find that Plaintiff's allegations as to Commissioner Brown—that Plaintiff emailed Brown, on April 25, 2015 regarding complaints of discrimination and retaliation, but failed to receive a positive response—sets forth a potentially timely claim that cannot be dismissed on a Rule 12(b)(6) motion. (Id. ¶¶ 122, 137.)

Plaintiff, however, fails to either set forth any discriminatory or retaliatory acts by Defendants Noonan, Bivens, Hoke, Bacher, or Blocker that took place within the limitations

period. Nor does Plaintiff substantiate any continuing, non-discrete pattern of discrimination/retaliation by any of these Defendants that extended into the limitations period. Accordingly, the § 1983 claims against these Defendants will be dismissed.

### E. Aiding and Abetting Under the PHRA

Defendants next move to dismiss Plaintiff's aiding and abetting PHRA claims—set forth in Count V of the Amended Complaint—against all individual Defendants, other than Cain, on failure to exhaust grounds.

The Third Circuit's test for exhaustion of administrative remedies is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)); Ocasio v. City of Bethlehem, No. 08–3737, 2009 WL 37518, at *3 (E.D. Pa. Jan. 7, 2009).  A claim has been administratively exhausted when the specifics of a charge with the administrative agency "fairly encompass a claim" and would put the agency and the defendant employer "on notice" of that claim.  See Antol, 82 F.3d at 1296; see also Nerosa v. Storecast Merch. Corp., No. 02-440, 2002 WL 1998181, at *3 (E.D. Pa. Aug. 28, 2002) ("There must be a close nexus between the facts supporting each claim or an additional claim in the judicial complaint must fairly appear to be an explanation of the original charge or one growing out of it.").[6]  The scope of the original charge should be liberally construed because charges are "most often drafted by one who is not well

---

[6]  Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 491–92 (E.D. Pa. 1999) (citations omitted).  Thus, "[t]o bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Stat. §§ 959(a), 962).

versed in the art of legal description." Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978).

Defendants contend that the "aiding and abetting" PHRA claim against each of the individual Defendants, except for Cain, should be dismissed as unexhausted because Plaintiff failed to identify these individuals in either of his dually-filed EEOC/PHRC charges. Defendants argue that even if the individuals were aware of Plaintiff's EEOC complaints, the complaints do not suggest that Plaintiff was charging these Defendants with discrimination in their individual capacities.

Plaintiff responds that all of the individual Defendants were, in fact included in the EEOC investigation. Although Plaintiff concedes that no individual Defendant was named in the original Form 5 Charges filed with the EEOC, he alleges that, in response to the opposition response to Form 5, he submitted a "rebuttal," which is part of the EEOC agency record and which specifically identifies the individual Defendants.

Plaintiff's argument is mistaken on several grounds. First, Defendants Brown, Hoke, Morris, Troxell, and O'Hara are not named anywhere in the EEOC record, either on the Form 5 document or in Plaintiff's purported "rebuttal" letter. Accordingly, these Defendants had no notice that their conduct was under formal review and that they were being charged as being individually responsible for the alleged violations.[7] To now require them to respond to individual claims against them would be prejudicial. See McInerney v. Moyer Lumber &

---

[7] Plaintiff argues that "the EEOC prepared the charge and it is axiomatic that an Agency error is not attributed to a complainant, viz Holt. An agency goof, if one has occurred by the EEOC, does not bar Holt's claims against the individuals. If so, it [sic] there is a goof that good [sic] acts as no factual basis nor legal basis to dismiss Holt's PHRA claim." (Pl.'s Opp'n Commw. Defs.' Mot. to Dismiss, p. 20.) The burden, however, is on Plaintiff to ensure the correct filing of his EEOC charge and he must review and verify by oath or affirmation. See generally Barzanty v. Verizon Pa, Inc., 361 F. App'x 411, 414 (3d Cir. 2010). That tenet is particularly appropriate in this case where Plaintiff has experience in filing EEOC charges.

Hardware, Inc., 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002) (holding that even where a defendant has notice of an EEOC complaint and shared commonality of interest with a named party, if that individual defendant is not named anywhere in the administrative complaint and there are no allegations that his personal conduct contravened the law, claims against the defendant in his individual capacity are not exhausted); Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456, 464 (E.D. Pa. 2013) (holding that failure to name or describe individuals anywhere in administrative complaint deprived the individuals of both notice of the claims against them and the opportunity to informally resolve those claims).

As to Defendants Bacher, Bivens, and Noonan, Plaintiff mistakenly argues that his counsel's "rebuttal" letter to the EEOC—filed months after his EEOC charge in response to Defendants' opposition—can expand the scope of his charge. "[A]n EEOC Charge Form serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it." Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 415 (3d Cir. 2010) (citing 42 U.S.C. § 2000e-5(b).) Although the mere failure to check a box or list a claim on an EEOC Charge Form does not preclude a plaintiff from asserting a claim, "it does prevent a plaintiff from 'greatly expand[ing] an investigation simply by alleging new and different facts when he [is] contacted by the Commission following his charge.'" Id. (quoting Hicks, 572 F.2d at 967). Once a charge of some sort is filed with the EEOC, "the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." Hicks, 572 F.2d at 966 (internal quotations omitted). Here, Plaintiff could have sought to amend his charge or, alternatively, filed a new charge naming the individual defendants. His counsel's letter to the EEOC after the investigation had been proceeding, however, cannot be deemed to expand the scope of the

investigation to include allegations of personal liability against the named individuals, including Bacher, Bivens, and Noonan.[8]  Plaintiff cites no authority to the contrary.

In light of Plaintiff's failure to exhaust his aiding and abetting PHRA claim against the individual Defendants, I will dismiss this claim against all Defendants except for Cain.

### F.    Venue

The claims remaining after the foregoing rulings include Title VII claims (Counts III and IV) against the Commonwealth and the PSP, § 1983 claims (Counts I and II) against Defendants Brown, Morris, Troxell, Cain, and O'Hara, and a PHRA aiding and abetting claim against Defendant Cain.  Defendants argue that these remaining claims should be transferred to the Middle District of Pennsylvania because venue in this Court is either not proper or not convenient.  As I find that venue is not proper in the Eastern District of Pennsylvania, I address only the first argument.

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  According to 28 U.S.C. 1391(a), venue is proper only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which

---

[8]    The prejudice against Commissioner Noonan is particularly notable.  Plaintiff's first EEOC/PHRC complaint was filed on April 27, 2015, and his second was filed on April 12, 2016. Commissioner Noonan retired from the PSP as of January 16, 2015, meaning that he would not have received notice of these administrative complaints unless he was specifically named in them.

any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). An individual defendant sued in his/her individual capacity is deemed to reside in the judicial district in which he or she is domiciled. 28 U.S.C. § 1391(c)(1); see also Simon v. Ward, 80 F. Supp. 2d 464, 469 (E.D. Pa. 2000). The residence of a state agency or state official is the state capitol even when branch offices of the state agency are maintained in other parts of the state. Bentley v. Ellan, No. 89-5418, 1990 WL 63734, at *1 (E.D. Pa. May 8, 1990).

For purposes of § 1391(a), Defendants concede that they are all residents of Pennsylvania meaning that, for venue to be proper here, at least one Defendant must reside in the Eastern District of Pennsylvania. Defendants Commonwealth and the PSP—as a state and state agency respectively—reside in Harrisburg, Pennsylvania, which is part of the Middle District of Pennsylvania. According to the Declaration attached to Defendant's Motion, the sole individual Defendant that resides in the Eastern District of Pennsylvania is Commissioner Blocker, who has been dismissed from this lawsuit. (See Commonwealth Defs.' Mot. to Dismiss, Ex. 3.)[9] Thus, no remaining Defendant resides in this forum. In turn, under § 1391(a), venue is improper in the Eastern District of Pennsylvania.

Under § 1392(b), venue may also lie in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Here, the Amended Complaint alleges that Plaintiff resides in Bucks County, which is in the Eastern District of Pennsylvania. (Am. Compl. ¶ 8.) It is undisputed, however, that all of the relevant events occurred in the Middle District of

---

[9] Plaintiff takes issue with the fact that the affidavit attached to Defendants' Motion identifies only the county of each Defendant's residence, as opposed to each Defendant's precise address. For purposes of a venue motion, however, the relevant inquiry is the Defendants' counties of residence. Plaintiff does not explain why the precise addresses are necessary to my analysis.

Pennsylvania. During the majority of the relevant time period, Plaintiff was a Station Commander at the PSP's Pocono Station, which is in Luzerne County in the Middle District of Pennsylvania. The roll call event, involving Trooper Girman, occurred at the Pocono Station, (Am. Compl. ¶¶ 54–58); Plaintiff was placed on "restricted duty" at the Pocono Station, (id. ¶¶ 100–104); Plaintiff received a twenty-day suspension resulting from his failure to stop a DUI driver while on his way to work at the Pocono Station, (id. ¶¶ 109–110); and Plaintiff was involuntarily transferred to the station in Highspire, PA in Dauphin County, which is also in the Middle District of Pennsylvania. (Id. ¶¶ 112–14.) Captain Bacher, Troxell, and O'Hara all worked in Harrisburg, PA, in the Middle District of Pennsylvania, suggesting that their disciplinary decisions were made in those locations. (Commonwealth Defs.' Mot. to Dismiss, Ex. 3, ¶¶ 9, 14, 15.) Likewise, both Noonan and Bivens worked from PSP Department Headquarters in Harrisburg, PA, suggesting that their promotion decisions were made from that office. (Commonwealth Defs.' Mot. to Dismiss, Ex. 3, ¶¶ 6, 13.) Plaintiff alleges no actions that would place the situs of the material events within the Eastern District of Pennsylvania.

Section 1391(c) is the only remaining basis on which venue in this forum may be premised. That section allows venue to lie in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to this action, but only "if there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(c). Venue is proper in the Middle District of Pennsylvania under both §§ 1391(a) and 1391(b), as the remaining Defendants reside there and as a substantial portion of the operative events occurred there. Therefore, Plaintiff cannot rely on § 1391(c) to premise venue in this Court.[10]

---

[10] In an effort to avoid the venue obstacle, Plaintiff argues that Defendants waived their challenge to venue by moving for partial dismissal of the action rather than a full dismissal of the

Once venue is deemed improper, 28 U.S.C. § 1406(a) dictates as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Id.; see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) (noting that § 1406(a) comes into play where plaintiffs file suit in an improper forum). Where considerations of judicial economy, convenience, and expeditious resolutions of dispute are implicated by dismissal of a matter, the court should, in the interests of justice, transfer to the proper venue rather than dismiss. See Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 425 (E.D. Pa. 2005) (citing cases).

Here, Plaintiff already faces several statute of limitations concerns. Dismissal of this case with leave to re-file in the proper forum could potentially bar Plaintiff's remaining claims. Accordingly, I will transfer this case, pursuant to § 1406(a), to the Middle District of Pennsylvania.

## IV. CONCLUSION

In light of the foregoing, I will dismiss (1) Plaintiff's § 1983 claims (Counts I and II) against Defendants Commonwealth of Pennsylvania, Pennsylvania State Police, and individual Defendants Blocker, Noonan, Bivens, Hoke, and Bacher; (2) Plaintiff's Title VII claims (Counts

---

action because of improper venue. He concludes that "defendants have consented to the eastern district by seeing [sic] this court only partially dismiss some claims." (Pl.'s Opp'n Commw. Defs' Mot. to Dismiss, 12.)

Plaintiff's argument is incorrect. "The plain language of Federal Rule of Civil Procedure 12(h) . . . makes clear that the improper venue defense is waived only when the defense is not asserted in a Rule 12 motion to dismiss or a responsive pleading." Albright v. W.L. Gore & Assocs., Inc., No. 02-304, 2002 WL 1765340, at *3 (D. Del. July 31, 2002). Here, Defendants moved to dismiss the legally deficient claims and, in the same motion, challenged venue for any remaining claims. Such a motion, brought at the earliest conceivable time in the trial, does not operate as consent to venue in the Eastern District or a waiver of their right to challenge venue.

III and IV) against all individual Defendants (Brown, Noonan, Bivens, Hoke, Morris, Bacher, Troxell, Cain, O'Hara, and Blocker); and (3) Plaintiff's PHRA claim (Count V) against all Defendants except for Defendant Cain. The remaining claims—which include § 1983 claims against Brown, Troxell, Cain, O'Hara, and Morris; Title VII claims against the Commonwealth and the PSP; and a PHRA claim against Cain—shall be transferred to the United States District Court for the Middle District of Pennsylvania.

An appropriate Order follows.